

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

February 14, 2012

<u>VIA ECF AND HAND DELIVERY</u>

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  <u>United States v. Dominic Caramanica</u>
           <u>Criminal Docket No. 11-0026 (JG)  </u>

Dear Judge Gleeson:

       The government respectfully submits this letter regarding the defendant Dominic Caramanica's sentencing, which is scheduled for February 17, 2012, at 2:00 p.m.  On September 15, 2011, Caramanica pled guilty to Count Five of the above-referenced indictment, charging Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a).

       In his sentencing memorandum dated February 9, 2012, the defendant requests a non-incarceratory sentence.  For the reasons set forth herein, the government respectfully submits that a sentence within the applicable Sentencing Guidelines range is appropriate based on the facts of this case.

I.    <u>The Applicable Sentencing Guidelines Range</u>

       As set forth in the Pre-Sentence Investigation Report ("PSR") the Probation Department has determined that the defendant's total offense level is 15 and his Criminal History Category is I, resulting in an advisory Sentencing Guidelines range of 18 to 24 months.  (PSR ¶ 65).  The Probation Department's calculation includes a two-point enhancement for an implied threat of bodily injury, as well as a two-point deduction for the defendant's minor role in the offense.  (<u>Id</u>. ¶¶ 24-30).

       The government's plea agreement, by contrast, estimated the defendant's total offense level to be 11.  The government's calculation does not include an enhancement for the implied threat of bodily injury.  It does include a four-point minimal role adjustment and a one-point "global" deduction to reflect the

decision by Caramanica's co-defendants to plead guilty and avoid the need for a trial.  Accordingly, the government estimated the applicable Sentencing Guidelines range to be 8 to 14 months.

II.  <u>Section 3553(a) Factors</u>

   A.  <u>Nature and Circumstances of the Offense</u>

The charges in this case stem from a long-term investigation involving a proactive cooperating witness ("CW"), identified in the indictment as John Doe #1, who made consensual recordings of numerous organized crime members and associates over a period of close to four years.  The defendant Caramanica is an associate of the Genovese crime family of La Cosa Nostra (the "Genovese family") who is assigned to the crew of longtime Genovese soldier Daniel Cilenti.  His co-defendants, Glenn Mazzella and Peter Pace, are also associates in Cilenti's crew.

At the direction of Mazzella, Caramanica extorted the individual identified in the indictment as John Doe #2 over a legitimate business debt John Doe #2 owed John Doe #1, a cooperating witness for the government.

For example, the following is an excerpt from a consensual recording on December 8, 2009, in which Mazzella directed Caramanica to visit John Doe #2 to obtain payment from him:

> MAZZELLA:    [Speaking to Caramanica on the phone] We got a guy we're doing business here. . . his name, you got a pen?  Take your time 'cause I give you some things to write down.  There's a place in. . . OK.  Are you ready?  Our friend is [John Doe #1].  He is also a friend of, uh, our friend in Yonkers [Cilenti].  Uh, he owns a trucking outfit.  And he's owed 50 grand from a company called Ecology Enterprises.  Ecology Enterprises doesn't, we don't have a street address, but I have a diagram here to where it is.  It's in Freehold and it's at the intersection of Five Points Road and Route 33.  And if you, I don't know if you have a fax machine or if you could get to one, but I could fax you a diagram of how to get there.  Now, the fellow [John Doe #1] regularly contributes.  And he's having an

2

|              |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                 |
|--------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | issue. . . yes. And he's having an issue with this 50. And . . . the 50 is a legitimate debt for trucking that he used. And he's avoiding [John Doe #1], [John Doe #1 has] been to his place, 10, 15 times. . .                                                                                                                                                                                                                                                                                                 |
| John Doe #1: | I just signed a release.                                                                                                                                                                                                                                                                                                                                                                                                                                                                                        |
| MAZZELLA:    | . . . And he, and he, and in addition to owing him 50 he won't release the lien which he was paid for already on a job site. He is holding up work . . . but you know Etre? I don't know if you remember them. It's another company [UI]. So anyway the point is, since geographically you're there if you go by and look for the owner and talk to him, just talk, and make sure that he contacts [John Doe #1] and pays him. And you know, you understand.                                                    |

Mazzella then explained to John Doe #1 that "even if he's not there, the message will be sent. The guy better get a hold of you. Alright, so we'll get somebody over there right away and he'll go as many times as necessary."

   Thereafter, Caramanica made two trips to John Doe #2's office in New Jersey. On the first occasion, John Doe #2 was not at the office, and Caramanica left a message for him with office staff. On the second occasion, Caramanica, together with Mazzella and John Doe #1, attempted to find John Doe #2 at his office, but when he was not there, made arrangements to meet him in the parking lot of a Wawa convenience store in Freehold, New Jersey, where Mazzella demanded payment of the money. On that occasion, Caramanica used an electronic device to confirm that John Doe #1's cellular phone was not bugged. Caramanica confirmed that the phone "was good" and Mazzella responded that it "makes you feel better to know, right?" The following is a brief excerpt from a conversation that occurred among Caramanica, Mazzella and John Doe #1 shortly before they entered John Doe #2's office:

|             |                                                                                                        |
|-------------|--------------------------------------------------------------------------------------------------------|
| MAZZELLA:   | Are they the kind of people that would jump and call the police? Because, I mean, I'm not gonna. . .   |
| CARAMANICA: | // Nobody is here.                                                                                     |

3

```
MAZZELLA:        . . . be nasty or threatening. . .

CARAMANICA:      // No.

MAZZELLA:        . . . to them, but I just . . . Give me
                 a feel.  Like what, what are they like?

CARAMANICA:      // (U/I) for a little while.

John Doe #1:     Yeah, I, I think he's a 911. . .
                 they're a 911 waiting to happen.

MAZZELLA:        Um-hum.

CARAMANICA:      If you push them, yeah.
```

Caramanica did not speak during the subsequent encounter with John Doe #2, but stood near Mazzella during the entire conversation. In the wake of the extortion, John Doe #2 ultimately made payments totalling $15,000 to John Doe #1, before John Doe #1's proactive cooperation efforts were terminated at the direction of the government.

    B.    <u>History and Characteristics of the Defendant</u>

        The defendant correctly notes that he is a decorated former police officer who was injured in the line of duty.  The defendant is also, as noted, an associate of the Genovese family in the crew of his co-defendant, Daniel Cilenti.  Although he has no prior criminal record, the defendant has been a longtime driver for Cilenti, with responsibilities that included interfacing with other members and associates of organized crime on Cilenti's behalf, making appointments for Cilenti to meet with other mob members, and accompanying Cilenti to those meetings.

        The defendant's past service to the City of New York should not immunize him from the consequences of his decision to become an associate of organized crime, and to take part in the charged extortion.  The government respectfully submits that the defendant's history and characteristics weigh in favor of a sentence within the applicable Sentencing Guidelines range.

    C.    <u>The Need for the Sentence Imposed</u>

        This Court is well acquainted with the scourge that organized crime is on society.  Although this case involved no outright acts of violence, it exemplifies some of the ways in which members of organized crime have entangled themselves in the construction industry in New York City.  The facts of this case –

including the defendant's role as an associate in the Genovese family, and the nature and circumstances of the charged crime – weigh in favor of a sentence within the applicable Sentencing Guidelines range.

The defendant was arrested on the morning of January 20, 2011, and released on bail the same day. In light of all the circumstances discussed above, the government respectfully submits that a sentence within the applicable Sentencing Guidelines range is necessary in this case to reflect the seriousness of the offense, to promote respect for the law, and to provide adequate deterrence and just punishment.

III. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence within the applicable Sentencing Guidelines range is appropriate on the facts of this case.

        Respectfully submitted,

        LORETTA E. LYNCH
        United States Attorney

By:  /s/ Stephen E. Frank
     Stephen E. Frank
     Assistant U.S. Attorney
     (718) 254-6143

cc: James R. Froccaro, Jr., Esq. (by email and ECF)