

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 13, 2012

VIA ECF AND HAND DELIVERY

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:   United States v. Dominic Caramanica
               Criminal Docket No. 11-0026 (JG)

Dear Judge Gleeson:

       The government submits this letter in advance of the *Fatico* hearing scheduled for next Wednesday, March 21, 2012, at 9:30 a.m., to address the question whether the defendant is an associate of the Genovese crime family of La Cosa Nostra (the "Genovese family") and whether, in that capacity, he acted as a driver for his recently deceased co-defendant, longtime Genovese soldier Daniel Cilenti.

       The government respectfully submits that, based on the court-ordered wiretaps, consensual recordings, and law enforcement surveillances described below and attached hereto, the evidence conclusively establishes that the defendant has been an associate of the Genovese family since at least 2004, that he served as a driver for Cilenti during that time, and that he committed the instant extortion as part of his association with the Genovese family.

I.    The Charged Crime

       On September 15, 2011, Caramanica pled guilty to Count Five of the above-referenced indictment, charging Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a).  The charge arose out of the defendant's involvement, together with Genovese soldier Daniel Cilenti and Genovese associates Glenn Mazzella and Peter Pace, in the conspiracy to extort and extortion of an individual identified in the indictment as John Doe #2, a demolition carting contractor, in or about and between September

2009 and February 2010.[1] The extortion related to a legitimate business debt John Doe #2 owed the individual identified in the indictment as John Doe #1, who is a cooperating witness for the government.

The evidence of the charged extortion included a consensual recording, made by John Doe #1 at the direction of law enforcement agents on December 8, 2009, in which Mazzella, speaking to Caramanica by telephone, directed him to visit John Doe #2 and to obtain payment from him. The following is a draft transcript of an excerpt of that recording, which is attached hereto as Exhibit A:

> MAZZELLA: We got a guy we're doing business here . . . his name, you got a pen? Take your time 'cause I give you some things to write down. There's a place in. . . OK. Are you ready? Our friend is [John Doe #1]. He is also a friend of, uh, our friend in Yonkers [Cilenti]. Uh, he owns a trucking outfit. And he's owed 50 grand from a company called Ecology Enterprises. Ecology Enterprises doesn't, we don't have a street address, but I have a diagram here to where it is. It's in Freehold and it's at the intersection of Five Points Road and Route 33. And if you, I don't know if you have a fax machine or if you could get to one, but I could fax you a diagram of how to get there. Now, the fellow [John Doe #1] regularly contributes. And he's having an issue. . . yes. And he's having an issue with this 50. And . . . the 50 is a legitimate debt for trucking that he used. And he's avoiding [John Doe #1], [John Doe #1 has] been to his place, 10, 15 times. . .
>
> John Doe #1: I just signed a release.

---

[1] In addition to Caramanica, Mazzella and Pace pled guilty. At sentencing, neither of those defendants disputed his association with the Genovese crime family. As the Court is aware, the remaining defendant, Genovese soldier Cilenti, died recently.

2

>MAZZELLA:       . . . And he, and he, and in addition to owing him 50 he won't release the lien which he was paid for already on a job site. He is holding up work . . . but you know Etre? I don't know if you remember them. It's another company [UI]. So anyway the point is, since geographically you're there if you go by and look for the owner and talk to him, just talk, and make sure that he contacts [John Doe #1] and pays him. And you know, you understand.

Even without more, the conversation excerpted above makes Caramanica's organized crime association clear. Mazzella's statement that John Doe #1 was "a friend of, uh, our friend in Yonkers" clearly described John Doe #1, in mafia jargon, as an organized crime associate of Cilenti, an inducted member of organized crime who, until his death, lived in Yonkers. Similarly, Mazzella's statement that John Doe #1 "regularly contributes" was plainly intended to apprise Caramanica that John Doe #1 regularly paid his protection money to Cilenti, and thus merited the assistance of Cilenti's crew.

The evidence also makes clear in other ways that the charged extortion was not Caramanica's first involvement in criminal activity, or with organized crime. For example, on January 20, 2010, when Caramanica traveled with Mazzella and John Doe #1 to New Jersey to demand money from John Doe #2, Caramanica, acting at Mazzella's direction, used an electronic device to confirm that John Doe #1's cellular phone was not bugged. Caramanica confirmed that the phone was "good" and added, "You never know who's listening to you." (See Exhibit B, attached hereto). Later in the same conversation, Mazzella wondered aloud how John Doe #2 had managed to survive so many years in the construction industry "without having somebody . . . you know, get around him." John Doe #1 responded that John Doe #2 had, in fact, told him that he also had "friends," including an individual named "Tommy Ronga" – a reference to Lucchese associate Thomas Ronga. Caramanica responded: "Lucchese, right?" (See Exhibit C, attached hereto). These conversations underscore both Caramanica's surveillance-consciousness and his familiarity with organized crime.

II.   Additional Association Evidence

In or about late 2004 and early 2005, pursuant to a court-authorized wiretap and as part of a separate investigation from the one culminating in the present indictment, agents of the

FBI intercepted communications to and from a cellular telephone used by John Yannucci, an associate of the Genovese family and a driver for Ciro Perrone, a longtime Genovese soldier and former acting captain, who died in November 2011.

On approximately two dozen occasions during that period, agents intercepted calls between Yannucci and an individual subsequently identified as Caramanica.  (<u>See</u> Exhibit D, attached hereto).  Most of the intercepted conversations involve Caramanica making arrangements to meet with Yannucci, or making arrangements for Cilenti to meet with Perrone.  In several of the calls, Cilenti and Perrone themselves come to the phone to discuss mob business, including Cilenti's tip that Joseph Massino, the then-boss of the Bonanno crime family, had become a cooperating witness for the government.  In all of the calls, the men speak in the coded language typical of organized crime members and associates, and Caramanica and Yannucci each make repeated references to "my guy," when referring to Cilenti and Perrone, respectively.  The following are a few examples of the foregoing:

- In a call on December 23, 2004 (call #357), Caramanica wishes Yannucci a "Merry Christmas," and adds, "Don't tell the other guy I called you, just wish him Merry Christmas, because my guy gets nuts.  He's out of his mind.  Just tell him I ran into you at the mall."  The men have a short conversation, during which Caramanica mentions having a recent test for thyroid cancer.  Yannucci closes by saying, "I'll pass that message along."

- In a call on January 31, 2005 (call #916), Cilenti speaks with Yannucci, who passes the phone to Perrone.  Cilenti and Perrone discuss, in coded language, the recent news that Massino – whom Perrone describes as "the big guy" – had begun cooperating with the government.  Cilenti indicates that he was aware of the news "two days before" and was "going to send my nephew, but he went to Puerto Rico."[2]

- In a call on March 21, 2005 (call #1734), Caramanica asks Yannucci whether his "friend" is around.  Yannucci responds that "he's sitting right next to me."

---

[2]    Cilenti's reference to his nephew is a reference to Caramanica, who was related to Cilenti.  Notably, during the pendency of this case, Caramanica has on two occasions requested Court permission to travel to Puerto Rico.

4

>  Caramanica indicates that he's "pretty close by and I'm with my friend."  Cilenti then gets on the phone and tells Yannucci that he "was going to bring him up to date on everything . . . tell him a few things." Yannucci tells Cilenti that he is taking Perrone home, but indicates that they will "be there all day tomorrow."  Cilenti responds that he is "not going to the club."

- In a call on April 7, 2005 (call #2173), Caramanica tells Yannucci that "my guy called me, he wanted the names of the two guys you were talking to him about." Yannucci responds, "My friend would know?"

- In a call on May 4, 2005 (call #3001), Caramanica asks Yannucci whether he will be "in the normal place tomorrow."  He adds "I'll see you around 5."  Yannucci inquires: "With your friend?"  Caramanica responds: "Yeah."

Taken together, the calls provide clear evidence of the fact that, as long ago as 2004, Caramanica was a close associate of Cilenti who drove him to meetings with other members and associates of organized crime, and passed messages for him. Moreover, during this same period, law enforcement surveillances captured Caramanica, with Cilenti and other members and associates of the Genovese family, at established mafia gathering spots.  For example, on November 3, 2004, Caramanica was surveilled by law enforcement agents at Umberto's Clam House – a restaurant controlled by Genovese boss Matthew "Matty the Horse" Ianniello, Jr. – along with Cilenti, Ianniello, Perrone and Yannucci, among others.  (See Exhibit E, clips 1 and 2, attached hereto).  On that date, Cilenti was observed by agents leaving with Caramanica in a 2001 Audi registered to Caramanica's father. On November 23, 2004, Caramanica was again surveilled by law enforcement agents at Don Peppe's Restaurant – an establishment controlled by Perrone – along with Perrone and numerous other members and associates of the Genovese family.

5

III. <u>Conclusion</u>

    The government respectfully submits that the foregoing evidence makes abundantly clear that Caramanica is, and has been for at least eight years, an associate of the Genovese family who acted as the driver for longtime Genovese soldier Daniel Cilenti. At the <u>Fatico</u> hearing, the government intends to rely on this evidence.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney

                     By:  <u>/s/ Stephen E. Frank</u>
                              Stephen E. Frank
                              Assistant U.S. Attorney
                              (718) 254-6143

Encl.
cc:  James Froccaro, Esq. (by ECF and Fed Ex)